IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIE BANKS, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff-Intervenor, ) <br> ) <br> v. ) <br> ) <br> ST. JAMES PARISH SCHOOL BOARD, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 2:65-cv-16173 <br><br> SECTION F <br><br> MARTIN L.C. FELDMAN |

## ORDER

Before the Court is the Joint Motion of Plaintiffs Kathleen Davis, Rhoda P. Johnson, and Miyoka N. Johnson ("Private Plaintiffs"), Plaintiff-Intervenor United States of America ("United States"), and Defendant St. James Parish School Board ("Board") (collectively "the Parties") to resolve two pending motions and modify previous orders of this Court.

## BACKGROUND

The Board is subject to a desegregation decree entered in 1967 based upon findings of past intentional racial discrimination by the Board. The Parties entered into a 2017 Consent Order ("2017 Consent Order"), Record Document ("R. Doc.") 128, in an effort to resolve the remaining issues in this school desegregation case in good faith. The 2017 Consent Order remains in effect.

The Board has agreed to withdraw its pending Motion for Unitary Status and Judgment of Dismissal Regarding Faculty Assignment, Student Assignment, and Facilities, R. Doc. 153, and Motion for Unitary Status and Judgment of Dismissal Regarding Discipline, R. Doc. 179, without prejudice to refiling as Paragraph F below provides.

1

For the reasons stated below and in Exhibit 1 to the Parties' Joint Motion, the Parties have agreed that the Board may consolidate the Science and Math Academy and the Career Technology Center subject to the terms set forth below, because the Parties do not anticipate that the proposed consolidation will negatively impact the Board's ability to fulfill its desegregation obligations.

Having considered the Parties' Joint Motion and finding the same to be well founded, the Court **GRANTS THE JOINT MOTION** and **ORDERS** that**:**

A.     The Clerk is directed to designate the Board's pending Motion for Unitary Status and Judgment of Dismissal regarding Faculty Assignment, Student Assignment, and Facilities, R. Doc. 153, and Motion for Unitary Status and Judgment of Dismissal Regarding Discipline, R. Doc. 179, as withdrawn, the withdrawal being voluntary by the Board and without prejudice to being refiled pursuant to Paragraph F below:

B.     The 2017 Consent Order, R. Doc. 128, is modified as set forth in Paragraphs C, D, E, and F below.  Except as modified below, or by prior Court order, all provisions of the 2017 Consent Order remain in effect.

C.     Paragraph 7(c) of the 2017 Consent Order is modified to include the following additional language at the end of the paragraph:

Beginning with the 2021-2022 school year, the Board may consolidate the Science and Math Academy and the Career Technology Center for the reasons stated and explained in Exhibit 1 to the Parties' Joint Motion, which is incorporated into this Order as if fully set forth herein.  The Parties do not anticipate that the proposed consolidation will negatively impact the Board's ability to fulfill its desegregation obligations.  Private Plaintiffs and the United States (collectively "Plaintiff Parties") may nevertheless seek judicial relief and/or raise issues regarding the Board's implementation of the consolidation in opposition to

future Board motion(s) for unitary status if one or both Plaintiff Parties alleges that the consolidation's implementation interferes with the Board meeting its desegregation obligations.

D.  The following Paragraphs are inserted after Paragraph 10 of the 2017 Consent Order:

10a.  The Board avers that it utilizes a racially neutral method of classroom assignment that is educationally sound, does not result in racially segregated classrooms and is otherwise nondiscriminatory, and does not negatively impact its desegregation obligations;

10b. The Board agrees that the Associate Principals who oversee the seventh and eighth grades and the Principals of St. James High School and Lutcher High School who oversee the ninth through twelfth grades will prepare a written report for the 2021-22 school year by July 30, 2021, and another written report for the 2022-23 school year by July 30, 2022, that includes the following:

1.  a copy of the complete classroom assignment student rosters by class including: (i) the number of students by race/ethnicity and grade level; (ii) the race/ethnicity of the faculty member(s) assigned to the classroom; (iii) whether any students in the class are grouped or assigned by race/ethnicity, ability, achievement, language needs, disability status, or another basis; (iv) the subject of the class; (v) whether the class is an elective or a non-elective course;

2.  a review of each class's roster of students, by race, that identifies any instance in which more than one class/section of the same course (e.g., a

section of English 1) has percentages of black students that vary by more than 20% from the percentage of black students taking the course, and explains the reasons for any such variations, including what steps were taken to address the variance or why it was not practicable to make alternative assignments. The District will use the 20% benchmark only to identify situations that warrant further inquiry, and does not concede that 20% is the standard to measure whether the class assignment is discriminatory as a legal matter; and

3. a copy of the current course catalog, which will include identification of course pre-requisites.

E. Paragraph 48 of Section VII MONITORING AND ENFORCEMENT in the 2017 Consent Order is replaced with the following:

48. a. Except as modified by a future scheduling order, on the first business day after February 15th and October 15th of each year this Consent Order is in effect, the Board will provide a status report to the Plaintiff-Parties. Each report will include a key for all codes or abbreviations used therein. Each Board status report will include the following information to the extent authorized by the Family Educational Rights and Privacy Act ("FERPA") and the Court's November 19, 2020 Protective Order, R. Doc. 184:

1) A brief narrative describing the District's efforts to comply with the 2017 Consent Order since the last status report including, and copies of any policies, forms, training materials, or other documentation that demonstrate those efforts;

2) Each school's current year enrollment by grade, race/ethnicity, gender, free/reduced lunch status, and disability status;

3) For each class in each school: (i) the number of students by race/ethnicity and grade level; (ii) the race/ethnicity of the faculty

4

        member(s) assigned to the classroom; (iii) whether any students in the class are grouped or assigned by race/ethnicity, ability, achievement, language needs, or another basis; (iv) the subject of the class; and (v) whether the class is an elective or a non-elective course;

4)    A list of students who applied for a transfer since the last report was filed that identifies each applicant by race, home school, receiving school, the reason for transfer, and, if denied, the reason for denial;

5)    Information (including, but not limited to, expected changes in the racial demographics of a school) on any school and/or classroom construction that increases or decreases any school's student capacity (including, but not limited to, those related to temporary classrooms), school consolidation, and school site selection decisions;

6)    The number of faculty and staff per job category and by race/ethnicity at each school;

7)    The District's self-assessment of progress toward ensuring that the faculty and staff assignments at each school do not reinforce its racial identifiability and in recruiting a diverse pool of applicants in good faith for faculty and staff vacancies, which shall identify the school employment numbers, including, the number of faculty and staff by position and race, and shall describe the reasonable steps taken to recruit a racially diverse staff and faculty; and

8)    Copies of any complaints received by a school-level or Central Office Administrator since the last status report, written or oral, from a student, a parent/guardian, or any other person alleging that a student was discriminated against because of the student's race/ethnicity (including, but not limited to complaints regarding the administration of discipline in the District), or alleging that a faculty or staff person was discriminated against because of his or her race/ethnicity, or alleging that an individual experienced retaliation because of a race-based complaint or investigation, and any documents related to the investigation and resolution of any such complaints.

      b. The Board will provide the following discipline report to Plaintiff Parties for the spring semester of the 2020-2021 school year on or before August 30, 2021; for the fall semester of the 2021-2022 school year on or before February 15, 2022; for the spring

semester of the 2021-2022 school year on or before June 15, 2022; and for any future semesters this Consent Order is in effect on or before the February 15th after a fall semester or on or before the July 30th after a spring semester:

> 1) An excel spreadsheet listing all referrals of students for discipline that includes the following fields from the District's discipline tracking system for each referral:
>
> "STUDENT ID NO.," "GRADE_LEVEL," "GENDER," "ETHNICITY," "LUNCH_STATUS," "IEP," "SCHOOL_ABBREVIATION," "INCIDENT_TS," "ENTRY_AUTHOR," "BEHAVIORS," "ACTIONS," "ACTION_PLAN_BEGIN_DT," and "ACTION_PLAN_END_DT;"
>
> 2) All documents demonstrating the Board's compliance with the requirement of Paragraph 36 of the 2017 Consent Order that at least every six months District Administrators at each school review discipline data from their school (disaggregated by type of infraction, the faculty or staff member, the faculty or staff member's race, student's gender, and student's disability status and combination of those variables) to identify and examine the cause of any disparities and outliers in the data and if such disparities or outliers exist, to take appropriate remedial measures including more intensive PBIS for students and additional professional development for faculty and staff; and
>
> 3) All documents demonstrating the Board's compliance with the requirements of Paragraph 37 of the 2017 Consent Order that at least every six months, the Superintendent or the Superintendent's designees review the discipline data from each school (disaggregated by type of infraction, the faculty or staff member, the faculty or staff member's race, student's gender, and student's disability status and combination of those variables) to identify and examine the cause of any disparities and outliers in the data and if such disparities or outliers exist, to take appropriate remedial measures.

c. OBJECTIONS

1) Within 60 days of receipt of the June 15, 2022 discipline report and within 45 days of the receipt of the July 30, 2022 class assignment report, Plaintiff Parties will submit to the Board any questions, objections, or concerns regarding the areas of operation addressed

      by such report and may include proposals for addressing such objections.

    2) If the Plaintiff Parties timely submit questions, objections or concerns, the Parties will meet and confer about each objection within 14 calendar days of service of the questions, objections, or concerns to the Board. Any party may request an extension of the meet-and-confer deadline for good cause, but will endeavor not to cause any undue delay.

  F. Within 21 days following the entry of this order, the Parties will meet and confer for the purpose of negotiating a scheduling order for any contested motions any party wants to file after completing the objection process set forth in Paragraph 48(c) above for the July 30, 2022 report. The scheduling order will address deadlines for discovery (including experts) and the briefing schedule for such motions. Within 60 days of the entry of this Order, the Parties will file a joint motion for approval of an agreed scheduling order or, if the Parties cannot agree on such an order, they will file such respective motions with proposed scheduling orders as may be necessary. No motion for unitary status may be filed before the date set forth for such motions in the scheduling order contemplated by this paragraph.

  New Orleans, Louisiana, this <u>27th</u> day of July 2021.

                     _____
                       United States District Judge