UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIE BANKS, *et al.*, | CIVIL ACTION No. 65-16173 |
| Plaintiffs, | SECTION: "P" (2) |
| UNITED STATES OF AMERICA, | JUDGE DARREL JAMES PAPILLION |
| Plaintiff-Intervenor, | |
| v. | MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |
| ST. JAMES PARISH SCHOOL BOARD, *et al.*, | |
| Defendants. | |

## CONSENT ORDER

Before the Court is the Joint Motion (Doc. 277) of Plaintiffs Rhoda P. Johnson and Miyoka N. Johnson ("Private Plaintiffs"), Plaintiff-Intervenor United States of America ("United States"), and Defendant St. James Parish School Board ("Board" or "District") (collectively "the Parties") to modify previous orders of this Court.

### BACKGROUND

The Board is subject to a desegregation decree entered in 1967 based upon findings of intentional racial discrimination resulting from *de jure* segregation. In 2017, the Parties negotiated and the Court approved a 2017 Consent Order ("2017 Consent Order"), Record Document ("R. Doc.") 128, to resolve the remaining issues in this school desegregation case.

The 2017 Consent Order remains in effect, subject to modifications set forth in the Court's July 27, 2021 Order, R. Doc. 214 ("2021 Order"). The 2021 Order, in relevant part, revised the Board's reporting obligations under the 2017 Consent Order and provided a process for future motions by the Parties, including any motion for unitary status filed by the Board. That process

led to a schedule for the Parties to conduct discovery and file motions, which was amended by subsequent scheduling orders. The Court's March 7, 2023 Order, R. Doc. 239, sets forth the current motion schedule.

The Parties engaged in mediation with Magistrate Judge Donna Phillips Currault in April 2023, which resulted in the resolution of the *Green* factors of student assignment (discipline), staff assignment, faculty assignment, and facilities. The Parties now submit a joint motion seeking the Court's approval of this consent order to memorialize the settlement terms.

Having considered the Parties' Joint Motion and finding the same to be well founded, the Court **GRANTS THE JOINT MOTION** and **ORDERS** that**:**

The 2017 Consent Order and 2021 Consent Order are modified as set forth below. Except as modified below, or by prior Court order, all provisions of the 2017 Consent Order and 2021 Consent Order remain in effect.

**I.      STUDENT ASSIGNMENT: BETWEEN SCHOOLS AND CLASSROOMS**

1. The Board's outstanding obligations regarding between school assignments and classroom assignments as described in the 2017 Consent Order (including, but not limited to Paragraphs 5 to 10) and the 2021 Order (including, but not limited to Paragraphs B to E) will remain in effect pending a later determination by the Court based on the Board's pending motion, R. Doc. 268, the responses or motions for further relief (if any) filed by Private Plaintiffs and/or the United States, and the testimony and evidence submitted at the September 26 to 28, 2023 hearing, R. Doc. 239.

**II.     STUDENT ASSIGNMENT: DISCIPLINE**

2. The Board's obligations regarding student assignment related to discipline as explained in the 2017 Consent Order and 2021 Order will remain in effect, except as explicitly modified here.

3. In addition to the Board's existing obligations, the Board shall, in consultation with Plaintiff Parties and an outside expert:

    a. modify the levels of consequences in the Code of Conduct and any related policies to progress from lowest level to highest level instead of A-D in descending order;

    b. modify the Code of Conduct and any related policies to include a matrix so that students, staff, and parents can see the incident and the range of consequences with the goal of ensuring consistent application of consequences and further reducing outliers and racial disparities;

    c. develop a short, stand-alone discipline document summarizing the Code of Conduct and any related policies that can be placed in students' notebooks;

    d. devise a flowchart to be shared with all schools, to train administrators, and ensure uniformity districtwide in the implementation of discipline policies; and

    e. ensure that the Code of Conduct and any related policies include social emotional and restorative programs, such as conflict resolution, peer mediation, and reflective writing, as available alternatives to in-school and out-of-school suspensions and expulsions.

4. The Board has proposed to the Private Plaintiffs and the United States (collectively "Plaintiff Parties") revisions to its Code of Conduct and related policies to incorporate the requirements in Paragraphs 2(a)-(e) above. The United States raised objections to those revisions on July 14, 2023. Private Plaintiffs are reviewing the Board's proposed revisions and will raise any objections or suggest modifications, at which point the Parties will work in good faith to reach mutual agreement on a final Code of Conduct and related documents. If the Parties reach an impasse as to either (a) whether Plaintiff Parties' objections have merit, or (b) how to remedy the

concerns raised in an objection, any party may move the Court to resolve the dispute. In order for changes to the Code of Conduct to be implemented for the fall 2023 semester, any objections or suggested modifications to the Board's proposed Code of Conduct must be resolved prior to July 31, 2023, and the Plaintiff Parties will make an effort to provide feedback to the District with an aim toward meeting the July 31, 2023 deadline. Subject to any unresolved objections or suggested modifications by the Plaintiff Parties, the Board shall implement the revisions required by this paragraph beginning with the 2023-2024 school year. The Parties may otherwise agree to delay implementation of the revised Code of Conduct.

5. The Board provided to Plaintiff Parties a discipline report for the fall semester of the 2022-2023 school year on July 15, 2023, and will provide a discipline report for the spring semester of the 2022-2023 school year on or before July 30, 2023. Every subsequent school semester until the Board attains unitary status regarding its administration of school discipline, the Board shall provide a discipline report to the Plaintiff Parties on or before February 15th reporting the prior fall semester and on or before July 30th reporting on the prior spring semester. Each discipline report shall include:

    a. For each school in the District, the current year enrollment by grade, race/ethnicity, gender, free/reduced lunch status and disability status:

    b. For each school in the District, an excel spreadsheet listing all referrals of students for discipline that includes the following fields from the District's discipline tracking system for each referral:[1]

    "STUDENT ID NO.," "GRADE_LEVEL," "GENDER," "ETHNICITY," "LUNCH_STATUS," "IEP," "SCHOOL_ABBREVIATION," "INCIDENT_TS,"

---

[1] The Board has already provided this spreadsheet for the fall semester of the 2022-2023 school year and need not resubmit it.

"ENTRY_AUTHOR" "BEHAVIORS,""ACTIONS,"
"ACTION_PLAN_BEGIN_DT," and "ACTION_PLAN_END_DT;"

c. All documents demonstrating the Board's compliance with the requirement of Paragraph 36 of the 2017 Consent Order that at least every six (6) months District Administrators at each school review discipline data from their school to identify and examine the cause of any racial disparities and outliers in the data and if such disparities or outliers exist, to take appropriate remedial measures including more intensive PBIS for students and additional professional development for faculty and staff; and

d. All documents demonstrating the Board's compliance with the requirements of Paragraph 37 of the 2017 Consent Order that at least every six (6) months, the Superintendent or the Superintendent's designees review the discipline data from each school to identify and examine the cause of any racial disparities and outliers in the data and if such disparities or outliers exist, to take appropriate remedial measures.

6. To comply with the requirements of Paragraphs 36 and 37 of the 2017 Consent Order, the Board's discipline review must include all variables (and combinations of variables) listed on the accompanying document "Attachment 1," and all calculations of disparities and outliers must be conducted as set forth on Attachment 1. The Board is not required to include any other variables and calculations of disparities and outliers in its discipline reviews to comply with Paragraphs 36 and 37.

7. Within sixty (60) days of the Board submitting its July 2025 discipline report, the Parties will meet and confer. If at the end of that meet and confer process the Parties agree that the Board has achieved unitary status regarding discipline, Plaintiff Parties will not object to the Board

5

moving for unitary status and will not seek further relief with respect to discipline. If either of the Plaintiff Parties does not agree that the District has achieved unitary status with respect to discipline, the Parties will negotiate a scheduling order for any contested motions any party wants to file. The scheduling order will address, among other items, deadlines for discovery (including experts), the number of depositions and discovery requests, and the briefing schedule for the motions. If the Parties cannot agree on such an order, they will file such respective motions with proposed scheduling orders as may be necessary. No contested motion for unitary status regarding discipline may be filed before the Court sets a date for such motions in the scheduling order contemplated by this paragraph.

## III.  FACILITIES

8. Private Plaintiffs have expressed concerns with the Board's compliance with the 2017 Consent Order's provisions to "remedy any disparities in the District's elementary school facilities that might exist," which the Board denies. R. Doc. 128 at 9. Private Plaintiffs allege that the Board failed to address repairs at schools in a nondiscriminatory manner, and the Board states that it has and does address repairs at its schools in an appropriate, prompt, and nondiscriminatory manner. While disagreeing with the conclusion that it has not already achieved unitary status regarding facilities on May 31, 2023, the Board sent to Plaintiff Parties a draft facilities policy that describes a non-discriminatory process for how the Board will prioritize any future (a) regular maintenance and/or repairs and (b) post-disaster construction and/or repairs at all schools in the District. The Parties agree that the formulation and adoption of the agreed-upon policy, subject to the following objection resolution provisions concerning the policy, will resolve the Parties' known concerns on the issue of facilities. Plaintiff Parties will not oppose the Board's moving for unitary status, as set

forth further below, on the issue of facilities so long as the below process is followed and no new concerns arise.

9. Plaintiff Parties have received the Board's proposed policy and are undergoing a meet-and-confer process to resolve Plaintiff Parties' objections. If the Parties cannot reach a mutual agreement about a final version of a facilities policy, Plaintiff Parties may move the Court to resolve any objections within twenty-one (21) calendar days from the date of the last meet and confer. Barring any unresolved objections between the parties, subject to the described the twenty-one (21) day period to seek resolution of the Court, the Board will consider the proposed facilities policy at its July 2023 meeting and will vote on the adoption of same at its August 2023 meeting. Otherwise, the Board shall consider and adopt the policy as soon as practicable.

10. The Board may move for unitary status on the facilities factor no sooner than September 7, 2023, and only if the twenty-one (21) day period to seek resolution of the Court has lapsed and there is no unresolved dispute before the Court concerning objections to the proposed facilities policy.

## IV. FACULTY ASSIGNMENT

11. Private Plaintiffs have expressed concerns with the Board's compliance with the 2017 Consent Order's requirement that the Board "seek to avoid having the faculty . . . assignment at any school reinforce its racial identifiability and recruit a diverse pool of applicants, in good faith, for faculty and staff vacancies." R. Doc. 128 at 10. The Board states that it has complied with the 2017 Consent Order's requirements concerning faculty assignment. Although the 2017 Consent Order "did not expressly adopt a desegregation standard" for faculty assignments, the Parties "agree[d] that the Fifth Circuit measures the effectiveness of these Green factors by allowing deviations of plus or minus fifteen percentage points (+/-15%) from the district-wide percentages."

*Id*. at 10 n.3. The 2017 Consent Order also defined faculty to include "Classroom Teachers, Media Specialists, District Instructional Specialists, Counselors, Speech Therapists, Psychologists, Social Workers, Behavior Specialists, and Nurses," but it excluded "CTC or SMA" faculty members. *Id*. at 10 n.4.

12. Private Plaintiffs allege that the Board failed to comply with the desegregation goal at certain schools, and that the Board has failed to adopt specific policies to recruit and retain Black teachers. The Board states, again, that it has complied with all the Court's requirements concerning faculty assignment. While disagreeing with the conclusion that it has not already achieved unitary status regarding faculty assignment, the Board agrees to continue to comply with the 2017 Consent Order's terms as to faculty assignment, including maintaining the +/-15% standard in the same way it is articulated in the 2017 Consent Order, and to adopt the following terms to resolve the faculty assignment issue.

13. The Board shall:

   a. advertise all faculty-related openings and/or vacancies by: (i) sending an email to the appropriate representative to the career or student life offices at Grambling State University, Louisiana Tech University, the University of Louisiana Monroe and all colleges and universities within a 100-mile radius of Lutcher, Louisiana; (ii) sending an email to the appropriate representatives at both the National Pan-Hellenic Council of Greater Baton Rouge and the Greater New Orleans Chapter of the National Pan-Hellenic Council; and (iii) sending an email to all District employees.

   b. participate in at least two (2) Historically Black College and University job fairs each year (in-person or virtual); and

8

    c. apply to and, if selected, participate in the New Teacher Experience program through the Louisiana Department of Education by June 24, 2023.

14. On May 31, 2023, the Board sent to Plaintiff Parties a draft faculty recruiting policy for review. The recruiting policy shall include the recruitment activities described in Paragraph 12(a)-(c) above. The Parties are undergoing a meet-and-confer process to resolve Plaintiff Parties' objections. In the event the Parties cannot reach an agreement on the proposed policy, any party may seek relief from the Court within twenty-one (21) days of the last meet and confer. Barring any unresolved disputes between the Parties and provided the twenty-one (21) day period to seek relief from the Court has lapsed, the Board shall consider the proposed faculty recruitment policy at its July 2023 meeting and shall adopt it at the Board's August 2023 meeting. Otherwise, the Board shall consider and adopt the policy as soon as practicable.

15. The Parties agree to the following reporting and objection procedures:

    a. On or before October 15, 2023, the Board shall file its October 1, 2023 Faculty Assignment Report;

    b. On or before May 1, 2024, the Board shall file a Recruiting Report that includes documentation of its compliance with the required recruiting activities as stated in Paragraphs 15 and 16 above (i.e., email notifications, job fair participation, and application for New Teacher Experience);

    c. On or before June 15, 2024, the Board shall file a Staffing Report that includes a school-by-school breakdown of the anticipated faculty staffing by race for the 2024-2025 school year as of June 1, 2024.

    d. On or before thirty (30) days following the Board's submission of each report, Plaintiff Parties must submit to the Board any objections or concerns that they may

have concerning the respective reports. The Board and Plaintiff Parties will meet and confer in good faith to resolve any objections within a reasonable time.

16. No motion for unitary status regarding faculty assignment may be filed before August 1, 2024. If at the end of that meet and confer process following the Board's June 15, 2024 report as contemplated by Paragraph 14 above, the Parties agree that the Board has achieved unitary status regarding faculty assignment, Plaintiff Parties will not object to the Board moving for unitary status and will not seek further relief with respect to faculty assignment. If either of the Plaintiff Parties do not agree that the District has achieved unitary status with respect to faculty assignment, the Parties will negotiate a scheduling order for any contested motions that any party wants to file. The scheduling order will address, among other items, the deadlines for discovery (including experts), the number of depositions and discovery requests, and the briefing schedule for the motions. If the Parties cannot agree on such an order, they will file such respective motions with proposed schedules as may be necessary.

V.     **STAFF ASSIGNMENT**

17. The Parties agree that the District has complied with the Court orders related to staff assignment. Given the current record, the Plaintiff Parties will not object to the District moving for partial unitary status in the area of staff assignment. Accordingly, the District may move for an unopposed judgment dismissing the desegregation injunction as to staff assignment and withdrawing the Court's supervision over that area of operation.

**SO ORDERED, DECREED, AND ADJUDGED,** New Orleans, Louisiana, this 19th day of July, 2023.

_____
DARREL JAMES PAPILLION
UNITED STATES DISTRICT JUDGE

10

## Attachment 1

## Discipline Review Variables and Calculations

Race (compared to the racial composition of the school):
- Referrals
- ISS
- OSS
- Expulsion

Gender (compared to the gender demographics of the school):
- Discipline referrals overall

Disability (compared to the percentage of students in the school with disabilities):
- Referrals
- ISS
- OSS
- Expulsion
- Top Three Infractions

Teacher Outliers (compared to the averages of teachers only):
- Referrals
- Top Three Infractions

Teacher Referrals by Race (outliers calculated as set forth in DOJ's February 24, 2023 letter using averages for teachers only):[i]

Administrator Actions (i.e., Referrals, ISS, OSS, and Expulsion) by Race (outliers calculated as set forth in DOJ's February 24, 2023 letter using averages for administrators only) (only required for high schools):[ii]
- Referrals
- ISS
- OSS
- Expulsion

Infractions/Offenses by Race (outliers calculated similar to "Teacher Referrals by Race" above but substituting Infraction/Offense for the teacher).[iii]

---

[i] Calculated by dividing the number of referrals of Black students by Teacher A by the number of referrals of white students by Teacher A. Then separately divide the total number of referrals of Black students by all teachers at Teacher A's school by the total number of referrals of white students by all teachers at Teacher A's school. If the first number is two times the second number or greater, Teacher A is an outlier.

[ii] Calculated by dividing the number of actions taken regarding Black students by Administrator A by the number of actions taken regarding white students by Administrator A. Then separately divide the total number of actions taken regarding Black students by all administrators in Administrator A's school with analogous discipline responsibilities by the total number of actions taken regarding white students by all administrators in Administrator A's school with

---

[ii continued] analogous discipline responsibilities. If the first number is two times the second number or greater, Administrator A is an outlier.

[iii] Calculated by dividing the number of referrals of Black students for a specific Infraction/Offense by the number of referrals of white students for that specific Infraction/Offense. Then separately divide the total number of referrals of Black students for all Infractions/Offenses by the total number of referrals of white students for all Infractions/Offenses. If the first number is two times the second number or greater, that specific Infraction/Offense is an outlier.